CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 30 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSEPH FLEMING,<br>　　Plaintiff, | Civil Action No. 7:16-cv-00410 |
| v. | **MEMORANDUM OPINION** |
| HAROLD W. CLARKE, et al.,<br>　　Defendants. | By:　Hon. Jackson L. Kiser<br>　　　Senior United States District Judge |

Joseph Fleming, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. §§ 1983 and 12132. Plaintiff names as defendants the Virginia Department of Corrections ("VDOC"), five staff of the VDOC (the "VDOC defendants"), and two nurses[1] (the "medical defendants") at River North Correctional Center ("RNCC"). Plaintiff alleges that Defendants were negligent and deliberately indifferent to his serious medical needs and discriminated against him on account of a disability, in violation of the Eighth Amendment of the United States Constitution, the Americans with Disabilities Act, and Virginia law. All but one defendant filed motions for summary judgment, to which Plaintiff responded, making the motions ripe for disposition.[2] After reviewing the record, I grant in part and deny in part Defendants' motions for summary judgment, and several claims remain against Nurse Parks and Correctional Officers ("C/O") Lundy and Dean.

I.

Plaintiff is not able to support his body weight and allegedly is unable to walk unassisted because of a "slipped spine" and pinched nerve. Plaintiff is able to stand with assistance albeit

---

[1] Only one of the nurses – Nurse Parks – has a motion for summary judgment pending. The other nurse – Nurse Crawford – had filed an earlier motion for summary judgment that was mooted upon Plaintiff's amended complaint but did not renew the request after the amended complaint. See, e.g., Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp. 232, 239-40 (D. Del. 1992) (recognizing an amended complaint moots a previously filed dispositive motion as to the original complaint). She has since filed a motion seeking leave to file out of time, and I grant the request and extend the time for thirty days.

[2] Plaintiff also filed a "motion for order of parties into settlement." The motion is denied as moot as Plaintiff may communicate with counsel for defendants about settlement without a court order.

with "extreme pain," and he cannot maintain his balance unless he has assistance or something to grab. Consequently, Plaintiff considers himself confined to a wheelchair.

Plaintiff arrived at RNCC in a wheelchair on November 16, 2015. Nobody specifically explained to Plaintiff upon his arrival that metal detectors were used there and that inmates must walk through them. Plaintiff also was not specifically advised that he could seek a medical waiver of that requirement.

During the intake process, defendant Nurse Parks met Plaintiff, who said that he could ambulate short distances with a cane. Nurse Parks told him that he could opt for either a wheelchair or a cane for assistance moving, and Plaintiff opted for a wheelchair. Plaintiff never asked for a medical waiver about the metal detectors.

On November 28, 2015, C/O Lundy ordered Plaintiff to pass through the metal detector before he could continue in his wheelchair to the chow hall. Plaintiff objected, explaining that he had a spinal injury, he could not walk without assistance, and feels pain when walking with assistance. C/O Lundy replied that Plaintiff would not be allowed to exit the building for any reason unless he first walked through the metal detector. Inmate Bolen, who was assigned to help move Plaintiff in the wheelchair, moved the wheelchair to the exit side of the metal detector while Plaintiff held onto the upright edge of the metal detector. With Bolen's help, Plaintiff stumbled, shook, and grunted in pain as he shuffled through the metal detector and back into the wheelchair.

On November 29, 2015, C/O Lundy again ordered Plaintiff to pass through the metal detector before going to the chow hall. Plaintiff again attempted to hold onto the side of the detector while Bolen moved the wheelchair, but Plaintiff fell to the floor once his legs gave out. Plaintiff's right knee struck the floor and became bruised, swollen, inflamed, and painful.

Plaintiff immediately told C/O Lundy that he needed to go to the medical department because of pain in his knee and lower back. C/O Lundy refused to contact the medical department and told Plaintiff to continue to the dining hall. Upon returning from the dining hall, Plaintiff again asked C/O Lundy for medical assistance because the pain had worsened, but C/O Lundy refused and told Plaintiff to return to his cell.

About an hour after returning to his cell, Plaintiff told a nurse doing "rounds" in the pod that he needed medical attention. The nurse told Plaintiff to file an emergency grievance so medical staff could call him to the medical building.

At around lunch on November 29, 2015, Plaintiff allegedly gave defendant C/O Dean an emergency grievance seeking medical care for his pain. Per policy, the receiving officer should pass the emergency grievance to appropriate staff who should answer it within eight hours.

Around dinner time that same day, Plaintiff asked a nurse whether the medical department had received the emergency grievance, and the nurse said no. The nurse examined Plaintiff's knee and noted it was slightly swollen but was without a bruise or abrasion. The nurse also noted that Plaintiff was able to stand with assistance. Per Plaintiff's request, the nurse noted that the doctor should review Plaintiff's eligibility for a waiver for the metal detectors. The swelling was reduced with icing.

Plaintiff had a brief appointment four days later on December 3, 2015. Defendant Nurse Crawford measured Plaintiff's vital signs, the doctor issued the waiver, and Nurse Crawford noted the waiver on Plaintiff's medical record.

Plaintiff faults C/O Lundy for making him walk through the metal detectors and faults C/O Dean for not processing the emergency grievance. Plaintiff faults Clarke, who is the Director of the VDOC; Walrath, who is the Warden of RNCC; and McBride, who is a Unit

Manager at RNCC, for promulgating policies requiring Plaintiff to travel through a metal detector. Plaintiff further faults Walrath and McBride for not advising Plaintiff to seek a waiver to bypass the metal detectors. Plaintiff complains that each defendant was deliberately indifferent to his serious medical need and committed willful, wanton, simple, reckless and gross negligence. Plaintiff also complains that each defendant violated the ADA. For example, C/O Lundy is liable under the ADA because he purportedly "conditioned [the] ability to use the dining hall and to eat meals based upon . . . clearing the metal detector, which [Plaintiff] was unable to do because of [his] disability."

Plaintiff seeks damages and an injunction. Plaintiff alleges that, for several months after the fall, he needed medication to reduce knee pain. Plaintiff also alleges he experienced emotional trauma from fearing if the fall aggravated his spinal injury. He seeks an order requiring every warden and head nurse to meet with him upon arrival at any VDOC facility, to exempt him from "any security measure[] or other circumstance[] at the institution [that] may pose a risk of substantial harm to [him] due to his disabilities," and either to exempt him from that circumstance or to transfer him to an "appropriate facility."

## II.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the

district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

A government official sued in an individual capacity via § 1983 may invoke qualified immunity. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case."

Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

### III.
#### A.

The VDOC is not a proper defendant to claims pursued under § 1983. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). To the extent that Plaintiff seeks damages against the staff of the VDOC in an official capacity, such relief is also not cognizable under § 1983. See, e.g., id. Accordingly, the VDOC and its staff are entitled to summary judgment on those bases.

#### B.

To the extent Plaintiff alleges that defendants violated VDOC policies and procedures, such a claim does not state a federal claim. See United States v. Caceres, 440 U.S. 741, 752-55 (1979); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Plaintiff repeatedly alleges Defendants failed to perform their duties, but negligence is not actionable under § 1983. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 538-39 (1981), overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Lovelace v. Lee, 472 F.3d 174, 194 (4th Cir. 2006). Accordingly, Defendants are entitled to qualified immunity and summary judgment on those bases.

## C.

After viewing the evidence and inferences in Plaintiff's favor, several disputes of material facts preclude qualified immunity and summary judgment in favor of C/O Lundy. One disputed dispositive fact is whether the appearing defendant "C/O A. Lundy" is the correct "C/O Lundy" named in the amended complaint. C/O A. Lundy claims he was not working at RNCC in November 2015, while Plaintiff continues his allegation that C/O A. Lundy indeed is the culpable C/O Lundy. Accordingly, a jury will resolve the credibility of the parties' disparate assertions based on the current record.

Another question of material is about C/O Lundy's alleged deliberate indifference. A jury will have to resolve whether, at a minimum, C/O Lundy recklessly disregarded a substantial risk of danger, either known to him or which would have been apparent to a reasonable person in C/O Lundy's position. Plaintiff presented to C/O Lundy as a wheelchair-bound inmate escorted by inmate caretaker, both circumstances in prison that would indicate Plaintiff had a serious medical issue related to mobility. Plaintiff objected to C/O Lundy's first order to walk through the metal detector and explained his spinal injury, inability to walk without assistance, and pain when walking. As to the second occurrence, C/O Lundy had already seen and heard Plaintiff stumbling and grunting in pain even with Bolen's assistance during the short walk through the metal detector. Yet, C/O Lundy made Plaintiff live these painful experiences even though policy allowed an alternative screening method for wheelchair-bound inmates.

Another question of material fact is the severity and the extent of pain Plaintiff suffered. After the fall, C/O Lundy twice denied Plaintiff's pleas for medical assistance and twice prevented Plaintiff from going to the medical department. Whether the pain Plaintiff allegedly

7

experienced was sufficient for Eighth Amendment purposes is a question to be resolved by a jury.

### D.

Plaintiff alleges that C/O Dean interfered with treatment by failing to process the emergency grievance. The emergency grievance allegedly requested emergency medical treatment because of the pain Plaintiff felt in his broken back and swollen knee after C/O Lundy ignored Plaintiff's pleas for medical care. Plaintiff handed the emergency grievance to C/O Dean for processing to the medical department, but the medical department never received it. Consequently, Plaintiff was left to remain in pain until dinner time when he was examined by a nurse. C/O Dean has no recollection of the emergency grievance.

Viewing the inferences in a light most favorable to Plaintiff, disputes of material facts exist whether the emergency grievance existed and whether C/O Dean understood the significance of the emergency grievance and, at a minimum, recklessly disregarded a substantial risk of inflicting continual pain by not processing the grievance to the medical department. As a consequence of this possible interference and delay with treatment, Plaintiff allegedly experienced substantial pain until a nurse evaluated him later that day. See, e.g., Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient."). Accordingly, a jury must resolve this claim.

### E.

Plaintiff faults Clarke, Walrath, and McBride for promulgating policies requiring Plaintiff to travel through a metal detector and faults Walrath and McBride for not advising him to seek a medical waiver to bypass the metal detectors. Nothing in these allegations suggests that these

8

defendants' alleged omissions constitute deliberate indifference to any "pervasive" and "unreasonable" risk of harm. Cf. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (discussing Eighth Amendment liability for a supervisor). These defendants may not be liable under § 1983 based on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978). Regardless, Plaintiff fails to establish that it is an unreasonable policy, practice, or custom to make inmates pass through metal detectors before congregating in the dining hall. Furthermore, policy allows waivers of that requirement when deemed appropriate by a doctor. See Turner v. Safley, 482 U.S. 78, 89-92 (1987) (stating prison policies infringing on a federal right must be reasonably related to legitimate penological interests); see also Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis). Accordingly, Clarke, Walrath, and McBride are entitled to qualified immunity and summary judgment.

## F.

During the medical screening upon intake, Nurse Parks noted in the "Current Medical/Dental Problems" section of the Intra-system Transfer Medical Review that Plaintiff required a wheelchair and also had a cane. Nurse Parks informed plaintiff that RNCC regulations allowed him either a wheelchair or a cane, but not both, and he needed to choose one. Plaintiff opted for the wheelchair even though he noted he could ambulate short distances with a cane.

Medical waivers are not addressed in the medical screening process unless the inmate raises a particular issue. Also, Plaintiff did not ask for any medical waiver. Because Plaintiff indicated to Nurse Parks that he could ambulate short distances, there was no discussion about a complete inability to walk or an inability to stand out of the wheelchair.

9

Even if Plaintiff wanted Nurse Parks to issue the waiver, she could not have done so. The doctor has the exclusive authority to order medical waivers, and thus, Nurse Parks could issue a waiver only upon a doctor's order. Nurse Parks never saw Plaintiff try to stand and walk, did not observe Plaintiff trying to walk through a metal detector, and was not involved with Plaintiff's medical care after the fall. Accordingly, Plaintiff fails to establish Nurse Parks' deliberate indifference to a serious medical need, and she is entitled to summary judgment.

## IV.

Under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Constantine v.George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999).

Defendants are entitled to summary judgment for the ADA claims. Plaintiff acknowledges he was not excluded from or denied meals on account of his wheelchair. The requirement to pass through the metal detector was not discriminatory; all inmates, whether aided by wheelchairs or not, were required to undergo a security check, including through the use of a metal detector.

Plaintiff's argument that he was "required to injure himself as a result of his disability in order to go to breakfast" is fallacious. The VDOC already provides a "reasonable modification" of the screening requirement for inmates who have received a medical waiver. See, e.g., 42 U.S.C. § 12131(2); Miller v. Hinton, 288 F. App'x 901, 902 (4th Cir. 2008). It is undisputed that Plaintiff had not requested that accommodation. "Logically, [the prison] cannot attempt to make reasonable accommodation without current knowledge of the [inmate's] medical

restrictions [to not walk through a metal detector]. Butler v. Wal-Mart Stores, Inc., No. 99-6144, 1999 U.S. App. LEXIS 32511, at *8, 1999 WL 1136761, at *3 (10th Cir. Dec. 13, 1999). Accordingly, Defendants are entitled to summary judgment for the ADA claims.

## V.
### A.

Plaintiff charges all defendants with simple negligence because he fell and received delayed medical care. Simple negligence means "the failure to use the degree of care an ordinary person would exercise to avoid injury to another." Harris v. Harman, 253 Va. 336, 340, 486 S.E.2d 99, 101 (1997).

The VDOC is immune from the simple negligence claim. "In the absence of express statutory or constitutional provisions waiving immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001). The Virginia Tort Claims Act ("VTCA"), Virginia Code §§ 8.01-195.1, et seq., creates a limited waiver of the Commonwealth of Virginia's sovereign immunity for claims of "damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment . . . ." Va. Code § 8.01-195.3.

While the Commonwealth has absolute immunity unless it is waived, government employees and officials have qualified immunity depending on the function they perform and the manner of performance. Alliance to Save the Mattaponi v. Commw. Dep't of Envtl Quality ex rel. State Water Control Bd., 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005). For example, state government employees are not entitled to immunity when they engage in gross or willful and wanton negligence or act beyond the scope of their employment by exceeding their authority and

11

discretion. James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); see Messina v. Burden, 228 Va. 301, 313-14, 321 S.E.2d 657, 664 (1984) (discussing the four-part test for employees).

It is clear the VDOC defendants qualify as governmental employees and are immune to Plaintiff's allegations of simple negligence. Accordingly, the simple negligence claims against the VDOC defendants are barred, and their motion for summary judgment is granted to that extent.

As the moving party, Nurse Parks has the burden of proving immunity is warranted by the evidence. Id. Nothing in the record establishes that Nurse Parks is a state employee, and her conclusory assertion of immunity is not sufficient to satisfy the four factor test under Messina. Accordingly, she has not established that she is immune to Plaintiff's claims of simple negligence. See Smith v. Ely, No. 7:14CV00168, 2015 U.S. Dist. LEXIS 13943, at *15-16, 2005 WL 500698, at *6 (W.D.Va. Feb. 5, 2015). Nurse Parks has not further addressed the simple negligence claim, and consequently, the claim remains pending.

## B.

Plaintiff also accuses all the defendants of gross negligence and also willful and wonton negligence. Gross negligence is negligence which shocks fair-minded people but is less than willful recklessness. Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984). In contrast, willful and wanton negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Id., 227 Va. at 321, 315 S.E.2d at 213. Stated differently, "[w]ilful or wanton conduct imports knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another and will

12

probably result in an injury." Friedman v. Jordan, 166 Va. 65, 68, 184 S.E. 186, 187 (1936). Proof of actual malice is not necessary as malice may be inferred from circumstances. Id.

The gross negligence and willful and wonton negligence claims will continue against C/O Lundy and C/O Dean. The disputes of material facts as to the unresolved questions for the Eighth Amendment claims implicate the same unresolved questions about these defendants' alleged negligent conduct causing Plaintiff' injuries and suffering.

Nurse Parks is entitled to summary judgment for the gross negligence and willful and wonton negligence claims. When a defendant exercises "some degree" of care for the safety of others, a claim of gross negligence cannot succeed. Colby v. Boyden, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991). The undisputed record evinces that Nurse Parks exercised, at minimum, slight diligence or scant care. Nurse Parks performed the medical screening and discussed Plaintiff's mobility needs. She approved Plaintiff to use the wheelchair after Plaintiff explained he could ambulate short distances with assistance but required the wheelchair for long distances.

As to the other VDOC defendants, Plaintiff fails to offer any evidence based on personal knowledge that Clarke, Walrath, or McBride committed gross negligence or willful and wonton negligence. Plaintiff fails to establish, beyond his mere assertion, that the VDOC defendants had a duty to discuss with him personally the various security policies and techniques used to find contraband. As noted earlier, these defendants' purported rules and policies provided a waiver for inmates who have received a medical waiver, which Plaintiff did not seek until after the fall. There is nothing in the record to infer the Clarke, Walrath, or McBride acted or failed to act with malice or were a proximate cause of any injury. Accordingly, Clarke, Walrath, or McBride's motion for summary judgment is granted to that extent.

## VI.

For the foregoing reasons, I grant in part and deny in part defendants' motions for summary judgment. The VDOC defendants' motion is denied as to the Eighth Amendment, gross negligence, and willful and wonton negligence claims against C/O Lundy and C/O Dean, and the motion is granted in part as to all other claims. Nurse Parks' motion for summary judgment is denied in part as to simple negligence, and it is granted in part as to all other claims. Nurse Parks and Nurse Crawford may file a motion for summary judgment supported by affidavit(s) within twenty-one days pursuant to Standing Order 2013-6. If they do not file the motion within that time, the Clerk shall set this matter for a jury trial.

**ENTER:** This 30th day of January, 2018.

／s／ Jackson L. Kiser
Senior United States District Judge